October 20, 2022

**SUBMITTED VIA ECF AND EMAIL**

The Honorable Katherine Polk Failla
United States District Judge
United States District Court for the Southern District of New York
40 Foley Square
New York, NY 10007
Failla_NYSDChambers@nysd.uscourts.gov

Re: *A&E Television Networks, LLC v. Big Fish Entertainment, LLC et al.,* 22-cv-07411
    (S.D.N.Y.)

Dear Judge Failla:

        Pursuant to Rule 3(B) of your Honor's Individual Rules of Practice in Civil Cases, the
Notice of Initial Pretrial Conference, dated September 15, 2022 (ECF No. 22), and the Court's
Order dated September 20, 2022 (ECF No. 31), the parties respectfully submit this joint status
letter in advance of the initial pretrial conference scheduled for October 27, 2022 at 10:30 a.m.

> ### A.    Nature of the Case, Legal and Factual Issues, and Defenses

        Plaintiff A&E Television Networks, LLC ("AETN" or "Plaintiff") brings this action
against Defendants Big Fish Entertainment LLC ("Big Fish"), Half Moon Pictures, LLC ("Half
Moon"), and ReelzChannel, LLC ("REELZ") (collectively, "Defendants") for direct and
contributory copyright infringement and intentional inducement of copyright infringement under
the Copyright Act; trademark infringement and unfair competition under the Lanham Act; and
trademark infringement and unfair competition under New York law.  Defendants deny each of
these claims and intend to file a motion to dismiss Plaintiff's Complaint in its entirety.

> #### 1.  *Plaintiff's Brief Statement*

        Plaintiff's claims arise out of Defendants' theft of Plaintiff's intellectual property—the
hit television series *Live PD*—which Defendants Big Fish and Half Moon cloned and resold to
Defendant REELZ, and which REELZ has aired since July 2022 under the name *On Patrol:
Live*. Complaint ¶ 1.

        In 2016, Plaintiff hired Big Fish to produce *Live PD* as a work made-for-hire, with
Plaintiff retaining sole ownership of all copyrights in the program and trademarks in the name of
the show.  *Id.* ¶ 2.  Plaintiff aired *Live PD* between 2016 and 2020.  *Live PD* showcased the
policing of America by following several police departments from across the country in real time
as they patrolled their communities, with hosts in studio guiding the action and providing
commentary.  *Live PD* was one of the most watched programs on all of cable television, and it
spawned numerous authorized spin-offs, also owned by Plaintiff.  *Id.* ¶¶ 1-2.  In June 2020, amid
nationwide protests against police brutality, AETN suspended production of new episodes of

*Live PD* during that critical time.  *Id.* ¶ 2.  Plaintiff never relinquished its rights to *Live PD*, nor authorized Defendants or anyone else to produce derivative programs based upon *Live PD* except as works made-for-hire.  *Id.*

     In May 2022, Defendants and key individuals associated with *Live PD* announced that they were "bringing back" *Live PD* and that *Live PD*'s host, Dan Abrams, was returning in the same role.  Despite receiving cease-and-desist letters from AETN's outside counsel, since July 22, 2022, Defendants have produced and aired at least 20 episodes of their infringing version of *Live PD*, now re-titled *On Patrol: Live*, which copies nearly every aspect of *Live PD*.  For example, not only does *On Patrol: Live* cover the same crime-related subject matter through the same format (i.e., a live series following police units around the country in real time, with hosts in studio curating and guiding the action, and pre-produced packages about cops/areas/hot cases during moments of quiet), it: (i) features the same primary studio host and co-host using the same catchphrases they used on *Live PD* while dressed as they were on *Live PD*, (ii) follows many of the same police departments as *Live PD* (and even some of the same individual officers), (ii) includes the same program segments as *Live PD*, such as "Crime of the Week," "Missing," and "Wanted," (iii) features the same visual, audio, and set design elements as *Live PD*, and (iv) even airs during the same time slots as *Live PD*.  *Id.* ¶¶ 4, 57-60.

     By explicitly copying *Live PD* in preparing and distributing episodes of *On Patrol: Live,* and by intentionally confusing the public into believing that *On Patrol: Live* is *Live PD* and is associated with Plaintiff's brand, Defendants have: (i) willfully infringed Plaintiff's copyrights; (ii) contributed to and intentionally induced infringement by third-party distributors; (iii) infringed Plaintiff's trademarks under federal and New York law; (iv) and engaged in acts of unfair competition in violation of federal and New York law.  *Id.* ¶¶ 1, 64-150.  Defendants' unauthorized actions have caused, and continue to cause, Plaintiff to suffer damages and irreparable injury.  *Id.* ¶ 9.  Plaintiff seeks an award of damages; an accounting and disgorgement of profits; a permanent injunction; attorneys' fees, costs, and pre-judgment interest as permitted by law; and additional further relief as the Court may deem proper, just, and equitable.  Plaintiff has requested a jury trial.

     Plaintiff anticipates that the primary legal and factual issues in this action will be: (i) whether and to what extent Defendants copied Plaintiff's protected works; (ii) the degree of similarity between *Live PD* and *On Patrol: Live*; (iii) the strength and similarity of the LIVE PD mark and the degree of public confusion resulting from Defendants' actions, including confusion as to whether Plaintiff granted Defendants the rights to use its marks or is otherwise connected with *On Patrol: Live*; (iv) Defendants' level of intent; and (v) whether and to what extent Plaintiff has been harmed by Defendants' actions.

     While Defendants raise a purported contract-related issue in their statement below, the provision they rely upon was addressed in the Complaint and does not lead to the conclusion they desire.  Moreover, nothing in the relevant contract supersedes Plaintiff's clear copyright and trademark rights.  Nor are the similarities between *Live PD* and *On Patrol: Live* limited to generic or non-protectable elements, as Defendants incorrectly suggest.  To the contrary, given the virtually identical nature of the two shows, Plaintiff has identified numerous elements whose selection, coordination, and arrangement are clearly protectable under governing case law.

Plaintiff will address Defendants' arguments more fully in its response to Defendants' anticipated letter to the Court.

## 2. *Defendants' Brief Statement*

This lawsuit is an impermissible attempt by AETN to misuse the copyright laws to achieve through litigation what it failed to obtain in the parties' commercial negotiations. In 2016, Big Fish, an innovative content production company that creates nonfictional programming for television, developed a live, unscripted show following police while on duty that became *Live PD*. Compl. ¶ 20. AETN was interested in the show. Big Fish ultimately agreed to produce episodes of *Live PD* to air on AETN's network, and the parties memorialized the terms of their relationship in a Production Series Agreement ("PSA"), which is incorporated by reference in the Complaint. *See* Compl. ¶¶ 18, 20–23. Pursuant to the PSA, Big Fish agreed, among other things, to a one-year consent period: for up to one year after AETN aired the final episode of *Live PD*, AETN's prior consent was required before Big Fish could authorize another network to air a similar show produced by Big Fish.

After airing four seasons of *Live PD* on its network, AETN abruptly canceled the show in 2020. *Id.* ¶ 1. Big Fish approached AETN about resuming or reimagining the show, but AETN had no interest in doing so—until it got wind others in the market were interested, at which point the parties engaged in negotiations but were unable to reach an agreement. Big Fish complied with its contractual obligations and waited until the expiration of the one-year consent period before moving on to produce a new unscripted program that follows police on the beat, *On Patrol: Live*, for a different network, REELZ. *Id.* ¶¶ 1, 38. AETN does not (and cannot) claim that Big Fish breached the PSA.

Even though AETN's one-year consent period had expired and Big Fish no longer needed AETN's consent to air an unscripted show following police on duty on another network, AETN sent Big Fish cease and desist letters regarding Big Fish's plans to create a different unscripted police show on REELZ. *Id.* ¶¶ 51–52. But these letters did not claim that AETN had exclusive ownership over the *format or concept* underlying *Live PD* (or any other unscripted police show) under copyright law or on any other basis. Of course, nobody owns or has exclusive rights to the format or concept of an unscripted, nonfictional show about police on the job. Instead, AETN complained that the working title of Big Fish's program violated AETN's trademark rights, and asserted intellectual property rights over the *content* of the *Live PD* episodes that had aired on AETN, which are not at issue. Nonetheless, AETN filed this lawsuit alleging that *On Patrol: Live* infringes AETN's purported intellectual property rights in the format and concept of *Live PD*.

Defendants intend to seek leave to file a motion to dismiss Plaintiff's Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) because each of AETN's claims fail as a matter of law. AETN has not adequately pled a claim for copyright infringement because *Live PD* and *On Patrol: Live* are based on stock themes and typical elements of unscripted shows that courts in this Circuit have long held are not protectable under the Copyright Act. The alleged similarities between the two shows, *id*. ¶¶ 4, 57–60, are generic

elements of an unscripted television show focused on police activity and necessarily flow from that uncopyrightable idea.

Plaintiff's trademark claims also are dismissible.  Defendants never used the *Live PD* mark in the title of their new show, "*On Patrol: Live*," and AETN has no protectable, exclusive right to use the word "live" in connection with a real-time broadcast.  "Live" is *at most* a descriptive mark without secondary meaning because it tells audiences what to expect:  live footage.  The unfair competition claim also fails as a matter of law because it is preempted by Plaintiff's copyright claim.

Defendants respectfully direct the Court to its forthcoming letter requesting a pre-motion conference for a more fulsome discussion of the grounds for dismissal.

### B.   Jurisdiction and Venue

Plaintiff asserts this Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1338 (jurisdiction over patent and trademark actions and unfair competition claims joined thereto) for all claims under the Copyright Act and Lanham Act, and supplemental jurisdiction under § 1367 for all related state law claims.  Compl. ¶ 14.[1]  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District; pursuant to 28 U.S.C. §§ 1391(c) and 1400 because Defendants are subject to personal jurisdiction and reside in this District (*id.*); and because AETN and Big Fish entered into a "Series Agreement" in connection with *Live PD* in which Big Fish agreed that any proceedings relating to the Series Agreement shall be commenced and prosecuted exclusively in this District.  *Id.* ¶ 18.

### C.   Existing Deadlines

The only existing deadline is the Defendants' deadline to answer, move, or otherwise respond to the Complaint on October 24, 2022.  *See* ECF No. 31.

### D.   Outstanding Motions

There are no outstanding motions.  Defendants have indicated they intend to file a letter seeking the Court's permission to file a motion to dismiss the Complaint under Rule 12(b)(6).  Plaintiff will oppose any such motion.  The parties have not yet reached an agreement on a briefing schedule should the Court permit Defendants to file their motion.

---

[1] Plaintiff AETN is a Delaware limited liability company with its principal place of business in New York, New York.  Compl. ¶ 10.  Defendant Big Fish is a New York limited liability company with its principal place of business in this District.  *Id.* ¶ 11.  Defendant Half Moon, which upon information and belief is a production arm of Big Fish, is a Delaware limited liability company with its principal place of business in Beverly Hills, California.  *Id.* ¶ 12. Defendant REELZ is a Delaware limited liability company registered to do business in New York with its principal place of business in Albuquerque, New Mexico.  *Id.* ¶ 13.

E.      **Discovery**

On October 14, 2022, Plaintiff served Defendants with a first set of requests for production of documents.  No other discovery has yet taken place.  As noted in the accompanying Proposed Civil Case Management Plan and Scheduling Order, the parties have not reached an agreement on a discovery schedule.  Plaintiff wishes to set a schedule for discovery, while Defendants have only agreed to a proposed date for initial disclosures.

Defendants seek a stay of discovery until the Court resolves their forthcoming motion to dismiss.  A stay is warranted because Defendants seek to dispose of the case in its entirety.  Conducting discovery against that backdrop, at this early stage of the case, would be time consuming, burdensome, and expensive for all parties, all of which would be completely avoided if the Court grants Defendants' motion to dismiss.  This is evidenced by Plaintiff's voluminous *first* set of requests for production, served on October 14, 2022, which includes *288 requests*.[2]  In the event Defendants' motion to dismiss does not completely dispose of the case, any decision by this Court that narrows Plaintiff's claims will have an important impact on the scope of discovery.  A stay of discovery pending resolution of Defendants' motion will save the parties significant time and expense and will not result in irreparable injury or prejudice to Plaintiff.

Plaintiff opposes this request and believes discovery should proceed regardless of Defendants' proposed motion, which Plaintiff does not believe will be case-dispositive.  Moreover, the purported 288 number which Defendants brandish is derived by adding together the similar requests served on each party—two production companies and a full-blown network—and Defendants' presentation of this issue is misleading at best.

F.      **Settlement Discussions**

Settlement discussions have not taken place since the filing of the Complaint.  The parties engaged in business negotiations regarding the subject matter before Plaintiff filed suit but did not reach an agreement.

---

[2] While Plaintiff is correct that this 288 number includes certain requests that are similar across parties, the fact remains that abundant discovery already has been propounded and is likely to continue absent a stay.

Dated: October 20, 2022                  Respectfully submitted,
      New York, New York


WEIL GOTSHAL & MANGES LLP                GIBSON DUNN & CRUTCHER LLP

/s/ *David Yohai*                        /s/ *Orin Snyder*
David L. Yohai                           Orin Snyder
Benjamin E. Marks
Randi W. Singer                          GIBSON, DUNN & CRUTCHER LLP
David E. Yolkut                          200 Park Avenue
Fredrick Rhine                           New York, NY 10166
                                         Phone: (212) 351-2400
767 Fifth Ave.                           Fax: (212) 351-6335
New York, NY 10153                       osnyder@gibsondunn.com
Phone:  (212) 310-8000
Fax:  (212) 310-8007                     Jay P. Srinivasan
david.yohai@weil.com                     Ilissa Samplin

*Attorneys for Plaintiff*                GIBSON, DUNN & CRUTCHER LLP
                                         333 South Grand Avenue
                                         Los Angeles, CA 90071
                                         Phone: (213) 229-7296
                                         Fax: (213) 229-6296
                                         jsrinivasan@gibsondunn.com
                                         isamplin@gibsondunn.com

                                         *Attorneys for Defendants*