Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Orin Snyder
Direct: +1 212.351.2400
Fax: +1 212.351.6335
OSnyder@gibsondunn.com



October 24, 2022

<u>VIA ECF</u>

The Honorable Katherine Polk Failla, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 618
New York, NY 10007

Re:     <u>Pre-Motion Letter in *A&E Television Networks, LLC v. Big Fish Entertainment LLC,
        et al.*, 22 Civ. 7411 (KPF) (S.D.N.Y.)</u>

Dear Judge Failla:

We represent Defendants Big Fish Entertainment LLC ("Big Fish"), Half Moon Pictures LLC
("Half Moon"), and ReelzChannel, LLC ("REELZ") (collectively, "Defendants") in this
action. Pursuant to Rule 4(A) of the Court's Individual Rules of Practice in Civil Cases, we
respectfully submit this letter to request a pre-motion conference to discuss Defendants'
proposed motion to dismiss the complaint for failure to state a claim under Rule 12(b)(6).

This is a copyright infringement action brought by A&E Television Networks, LLC ("A&E").
A&E alleges that the television show *On Patrol: Live*, which airs on REELZ, infringes the
television show *Live PD*, which previously aired on A&E. Both shows are unscripted
programs that follow police on the beat with live cameras. This case is ripe for dismissal
because the copyright claims are based on stock themes and typical elements of unscripted
shows that courts in this Circuit have long held are not protectable under the Copyright Act.

Defendant Big Fish is an innovative content production company that produces unscripted
programming. Plaintiff A&E is a media and entertainment brand, with the A&E network as
its flagship cable channel. In 2016, Big Fish developed a live, unscripted television show
following police on patrol, titled *Live PD*. Compl. ¶ 20. A&E and Big Fish memorialized
their relationship in a Production Services Agreement ("PSA"), which is incorporated by
reference in the Complaint. *Id.* ¶¶ 18, 20–23. Pursuant to the PSA, Big Fish agreed, among
other things, to a one-year exclusivity period: for up to one year after A&E aired the final
episode of *Live PD*, A&E's prior consent was required before Big Fish could authorize another
network to air a similar show produced by Big Fish—"i.e. a 'live' television series following
police units around the country, with hosts in studio to guide the action, and pre-produced
packages about the cops/areas/hot cases during moments of quiet." PSA at 2(f). A&E aired
its final episode of *Live PD* in 2020. Compl. ¶ 1. After the one-year exclusivity period expired,
Big Fish moved on to produce a new program, *On Patrol: Live*, an unscripted show that follows
police on the beat, for a different network, REELZ. *Id.* ¶ 38.

A&E sent Big Fish cease and desist letters, *id.* ¶¶ 51–52, despite the expiration of the one-year

# GIBSON DUNN

exclusivity period. In its letters, A&E said the working title of the program, "*PD Live*," violated its trademark rights, and asserted they own all copyrights in the content of *Live PD*. As we demonstrate below, nobody owns or has exclusive rights to the concept of the show. Instead, what A&E bargained for and obtained in the PSA was a one-year consent provision requiring Big Fish to obtain A&E's consent before producing a similar show for another network for the first year after A&E canceled *Live PD*. Once that one-year period expired, Big Fish was free to work with REELZ or any other network on a new unscripted police show. Given this context, this lawsuit is an impermissible attempt by A&E to misuse the copyright laws to achieve through litigation what it failed to obtain in the parties' commercial negotiations—an extension of the one-year contractual exclusivity period.

A&E's copyright claims fail as a matter of law. To state a claim for copyright infringement, A&E must allege facts plausibly demonstrating "copying of constituent elements of the work that are original." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010). A&E must show "a substantial similarity exists between the defendant's work and the ***protectable*** elements of plaintiff's." *Castorina v. Spike Cable Networks, Inc.*, 784 F. Supp. 2d 107, 109 (E.D.N.Y. 2011)(emphasis added). A&E has not met—and cannot possibly meet—this burden because there is nothing protectable about a program following police on patrol.

"The '*scènes-à-faire*' doctrine 'teaches that elements of a work that are 'indispensable, or at least standard, in the treatment of a given topic' . . . get no protection.'" *Ranieri v. Adirondack Dev. Grp., LLC*, 164 F. Supp. 3d 305, 332 (N.D.N.Y. 2016) (citation omitted); *see also Williams v. A & E Television Networks*, 122 F. Supp. 3d 157, 162 (S.D.N.Y. 2015) (granting motion to dismiss copyright infringement claim based on a work comprised of "nothing but 'common stock ideas' and unoriginal *scènes à faire* that do not rise to the level of original protectable expression"). A&E alleges that Defendants infringed its intellectual property rights in *Live PD*, but its claim is legally barred because its own allegations show *Live PD* is comprised of stock concepts and scènes à faire that is not protectable under the Copyright Act. A&E says Defendants copied the following elements of *Live PD*, among others:

- a "studio in which the hosts sit" that "features large TV screens on the walls and blue and red lights behind the screens";
- "footage of live or pre-packaged police patrol action and studio commentary by the show's hosts discussing the unfolding action"; and
- "descriptions of the events in the lower left-hand corner (e.g., 'evading police') with the location of the event beneath the description."

Compl. ¶ 57. These are generic elements of a live, unscripted television show focused on police activity and "necessarily flow from th[at] uncopyrightable idea." *See Rodriguez v. Heidi Klum Co.*, LLC, 2008 WL 4449416, at *5 (S.D.N.Y. Sept. 30, 2008). They are not protectable as a matter of law. *See Walker v. Time Life Films, Inc.*, 784 F.2d 44, 49 (2d Cir. 1986). A&E's claims for contributory and inducing copyright infringement fail with its direct infringement claim as a matter of law, because "in order to hold a defendant secondarily liable someone else

must have directly infringed on the copyright holder's rights." *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 750 (S.D.N.Y. 2012) (citation omitted).

It is ironic that A&E—of all television companies—is bringing this copyright infringement case. A&E, a well-known cable network, has aggressively litigated and successfully obtained dismissal of similar claims brought against A&E. In *Williams v. A&E Television Networks*, the alleged creator of a reality television show sued A&E in this District for copyright infringement because A&E's show, *Married at First Sight*, allegedly bore similarities to a reality show treatment the plaintiff had posted online. 122 F. Supp. 3d at 159. After A&E moved to dismiss, the court adopted A&E's arguments and dismissed the case, holding that "typical elements of a reality's show production . . . are not protectable." *Id.* at 162. In seeking dismissal on the pleadings, A&E cited "*[f]oot chases* and the morale problems of *policemen*" as common concepts that are not protectable. Mot. To Dismiss, *Williams*, No. 14-cv-9894, ECF No. 33 at 8 (filed May 20, 2015) (emphases added) (citations omitted).

A&E's trademark claims also merit dismissal. Defendants did not use the *Live PD* mark in the title of their new show, "*On Patrol: Live*." A&E nonetheless alleges the singular "word 'Live[]'" is "unique" and protectable. Compl. ¶ 17. Of course, A&E has no protectable, exclusive right to use the word "live" in connection with a real-time broadcast—which merely "giv[es] the general name of the product" and thus "can never meet the distinctiveness element." *Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 & n.8 (9th Cir. 1998); *see CES Pub. Corp. v. St. Regis Publ'ns, Inc.*, 531 F.2d 11, 13 (2d Cir. 1975) (no trademark protection for "names which describe the genus of goods being sold"). "Live" is at most a descriptive mark without secondary meaning because it tells viewers what to expect: live footage. A&E does not, and cannot, allege the "the primary significance of" the word "live" "is to identify" A&E as "the source" of *Live PD*. *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851, n.11 (1982). *Live PD* stands in a long line of shows whose names include the word "live" (e.g., *Saturday Night Live*, *Live With Regis and Kathie Lee*, etc.).

A&E also cannot show Defendants' use of "Live" in "*On Patrol: Live*" is "likely to cause [consumer] confusion." *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406–07 (2d Cir. 2005) (quoting 15 U.S.C. § 1125(a)(1)(A)). In fact, the tweets and Internet posts referenced in the Complaint, *see, e.g.*, Compl. ¶ 62, show audience members "knew of the existence of" *On Patrol: Live* "as separate and distinct from" *Live PD*. *Lemme v. Nat'l Broad. Co.*, 472 F. Supp. 2d 433, 450 (E.D.N.Y. 2007). That is evidence of "consumer knowledge, not confusion." *Id.*

Finally, A&E's unfair competition claim fails because it is preempted by A&E's copyright claims, as it is premised only on allegations of copying. *See* Compl. ¶¶ 114–17, 146–48; *Wolstenholme v. Hirst*, 271 F. Supp. 3d 625, 642 (S.D.N.Y. 2017).

We thank the Court for its consideration and look forward to the opportunity to present these arguments in support of Defendants' motion to dismiss for failure to state a claim.

Hon. Katherine Polk Failla, U.S.D.J.
October 24, 2022
Page 4

Respectfully Submitted,

*/s/ Orin Snyder*

Orin Snyder

The Court is in receipt of Defendants' above pre-motion letter.  The
conference scheduled in this matter for October 27, 2022 is hereby
converted into a pre-motion conference.  The parties should be
prepared to discuss Defendants' anticipated motion at that time.

The Court's usual practice is to require any party opposing an
anticipated motion to file a letter response within three business
days after the request is received.  Recognizing that the conference
will take place before that deadline, Plaintiff may either (i) file
a responsive letter brief ahead of the conference, or (ii) present
its views orally at the conference.

The Clerk of Court is directed to terminate the motion at docket
entry 34.

SO ORDERED.

Dated:    October 24, 2022
          New York, New York

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE