**Weil, Gotshal & Manges LLP**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

<u>**VIA ECF AND E-MAIL**</u>

October 26, 2022

**David L. Yohai**
+1 (212) 310-8275
david.yohai@weil.com

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

Re: <u>***A&E Television Networks, LLC v. Big Fish Entertainment, LLC, et al.*, No. 22-CV-07411**</u>

Dear Judge Failla:

  I write on behalf of Plaintiff A&E Television Networks, LLC ("AETN") pursuant to the Court's October 25, 2022 order (ECF No. 35). For the reasons set forth below, Defendants' proposed motion to dismiss is meritless.

  **I. Plaintiff Pleads Well-Supported Copyright Infringement Claims**

  This action arises out of Defendants' theft of Plaintiff's hit series *Live PD*, which Defendants are now airing as *On Patrol: Live*. Compl. ¶ 1. Not only did Defendants copy *Live PD*, they engaged in a coordinated promotional campaign that caused the Wall Street Journal, New York Post, and the show's executive producer to say that "***Live PD is coming back this summer as 'On Patrol: Live.'***" *Id.* ¶¶ 1, 3, 37-48 (emphasis added). Copyright infringement occurs where, as here, plaintiff owns a valid copyright and: (i) the defendant "actually copied" plaintiff's work; and (ii) there is "substantial similarity" between the defendant's work and "protectable elements" of plaintiff's. *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010). Plaintiff has a valid copyright (Compl. ¶19), and Defendants do not address the first prong of the test, which is satisfied by (a) direct evidence (*e.g.*, an admission), or (b) indirect evidence that defendant had access to the original work and the works' similarity is probative of copying. *Id.* The Complaint alleges both: Defendants touted that *"Live PD* is back as *On Patrol: Live*," and also undeniably had access to *Live PD* (Big Fish produced *Live PD* and the shows share executive producers, among other positions). *Id.* ¶¶ 3, 37-48 66 (emphasis added).

  As to the second prong, "questions of non-infringement have traditionally been reserved for the trier of fact." *Gaito*, 602 F.3d at 63. Defendants nonetheless focus on this prong, pursuant to which courts have found a work protectable if it entails "some minimal degree of creativity." *Hines v. W Chappell Music Corp.*, 2021 WL 2333621, at *2 (S.D.N.Y. June 8, 2021). If a work has a mix of protectable and unprotectable elements, courts ask whether "the protectable elements, standing alone, are substantially similar" to the allegedly infringing work. *Id.*  This inquiry is "holistic"; courts do not "dissect [works] into their separate components, and compare only those elements which are in themselves copyrightable." *Walkie Check Prods., LLC v. ViacomCBS Inc.*, 2022 WL 2306943, at *5 (S.D.N.Y. June 27, 2022) (Failla, J.). Rather, they compare the works' "total concept and overall feel" and look at "the original way in which the author has 'selected,

coordinated, and arranged' the elements" of the work. *Id.* (denying motion to dismiss claim that BET's "House Party" infringed a treatment for a reality show featuring a house party).

Defendants blatantly misrepresent the Complaint's actual allegations, stating "A&E says Defendants copied the following elements of Live PD, ***among others***," and then listing three cherry-picked items—which Defendants describe as "generic elements" of reality shows—from among the Complaint's ***ten pages*** of factual allegations specifically documenting the fact that *On Patrol: Live* is a direct, one-to-one rip-off of *Live PD*. *See* Compl. at 18-27. "Among others" does extremely heavy lifting in this sentence, and would be more correctly stated as "among ***everything***." The Complaint alleges that *On Patrol: Live* copies nearly every original element of *Live PD,* including: (i) the same hosts (one of whom is also an executive producer of *On Patrol: Live*) dressed as they were on *Live PD* and using the same catchphrases; (ii) identical pre-taped show segments, such as "Missing," "Crime of the Week," and "Wanted"/"Wanted List," using the same presentation style; (iii) several of the same police departments and officers; and (iv) the same arrangement of visual and audio elements throughout the show to reproduce *Live PD*'s total concept and overall feel. Compl. ¶¶ 4, 57-61. These allegations easily satisfy the second prong.

Even Defendants' own cases show there is no basis for dismissal. *Ranieri v. Adirondack Dev. Grp., LLC*, 164 F. Supp. 3d, 305, 333 (N.D.N.Y. 2016), was decided in the plaintiff's favor on this point: the court held a design was protectable even though it was made up of generic features because its "gestalt–its overall feeling, shape and arrangement" was original. Moreover, Plaintiff's claims are fully in line with its arguments in *Williams v. AETN*, despite Defendants' insinuations to the contrary. Unlike this case—in which there are two full shows, the second of which is a direct (and admitted) replica of the first—*Williams* concerned a treatment that was "significantly dissimilar" from a show, including because the treatment focused on the "glamour of a 'dream house' and a 'dream wedding'" and allowed viewers to vote on which couples married, while the show depicted "a social experiment" in which experts "through science and research, match three couples" to determine if they will divorce. 122 F. Supp. 3d 157, 164-65 (S.D.N.Y. 2015). AETN expressly stated in *Williams* that even generic stock concepts receive copyright protection if they are "selected, coordinated or arranged" in an original way. Mot. to Dismiss, *Williams v. AETN*, No. 14-CV-9893, ECF No. 33 (S.D.N.Y. May 20, 2015). Neither *Williams* nor any other case cited by Defendants suggests they can steal an entire show with no consequences.[1]

Defendants' contract-based argument is also meritless. The PSA grants Plaintiff ownership of all *Live PD* copyrights and trademarks in perpetuity, and the clause cited by Defendants cannot be read in a vacuum and does not negate those rights. The cited clause prohibits Big Fish from authorizing the telecast of any program produced by Big Fish substantially similar to the Live PD Series for a one-year period. Compl. ¶ 23. This is a *constraint* on Big Fish, not an expansion of its

---

[1] *See Castorina v. Spike Cable Networks, Inc.*, 784 F. Supp. 2d 107, 113 (E.D.N.Y. 2011) (treatment in which contestants played sports against athletes, hosted by a federal agent and a biochemist, did not "remotely resemble" show without those host archetypes that pitted contestants against athletes in a variety of contests); *Rodriguez v. Heidi Klum Co., LLC*, 2008 WL 4449416, at *5 (S.D.N.Y. Sept. 30, 2008) (treatment in which contestants created cheap clothing lines was distinguishable from show with contestants competing in high fashion contests for judges).

rights. It gives Plaintiff contractual safeguards—in addition to the safeguards of copyright and trademark law—in the event Big Fish creates a substantially similar show to *Live PD*. In any event, the clause cited by Defendants is inapplicable because *On Patrol: Live* is not merely similar to *Live PD*; it is a blatant rip-off of the entire show and was marketed as bringing back "the show." Moreover, Defendants' contract-based argument is absolutely inapplicable to Half Moon and REELZ because **neither Half Moon nor REELZ is a party to the PSA**.

### II.   Plaintiff Pleads Well-Supported Trademark Infringement and Unfair Competition Claims

Defendants deliberately infringed Plaintiff's trademarks to promote *On Patrol: Live* in a manner calculated to confuse consumers and take advantage of the tremendous goodwill associated with *Live PD*. Compl. ¶¶ 37-47 (REELZ and *On Patrol: Live* executive producers stating "*Live PD* is back," "coming back," and "returning" on REELZ). This is not, as Defendants attempt to frame it, a dispute over the use of "Live" in the title; rather, the Complaint explains that Defendants used the Plaintiff's trademarks in statements to major advertisers and the media before the show aired, including originally calling their show "*PD Live*." *Id.* ¶¶ 48-50. Even after Defendants changed the name in an attempt to avoid liability, the final name, *On Patrol: Live*, is confusingly similar to Plaintiff's registered mark LIVE PD: POLICE PATROL (a *Live PD* spinoff). *Id.* ¶ 107. These acts were calculated to cause—and have led to—widespread actual consumer confusion. *Id.* ¶ 62 ("I'm confused. Is *Live PD* back on the air?", "*Live PD* back!!!", and "*Live PD* returns tonight").

Trademark infringement and unfair competition claims arise where, as here, a defendant's use of plaintiff's mark creates a "likelihood of confusion" as to origin or sponsorship. *Merck & Co. v. Mediplan Health Cons., Inc.*, 425 F. Supp. 2d 402, 410 (S.D.N.Y. 2006). Courts in this circuit use the 7-factor *Polaroid* test to assess likelihood of confusion. *See Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 327 (2d Cir. 2020) (citing *Polaroid v. Polarad Elecs.*, 287 F.2d 492, 495 (2d Cir. 1961)). This "fact-intensive analysis" ordinarily "does not lend itself to a motion to dismiss." *Merck*, 425 F. Supp. 2d at 412. Defendants understandably gloss over this analysis because the allegations of the Complaint show that the factors favor Plaintiff: (1) The Live PD Mark is strong (Compl. ¶¶ 36, 100-01); (2) Defendants have a highly similar mark and previously used the Live PD Mark itself (*id.* ¶¶ 37-47, 48-50); (3) the two shows are in direct competitive proximity (*id.* ¶ 129); (4) Defendants have "bridged the gap" (*id.* ¶¶ 62); (5) consumers have shown actual confusion (*id.*); (6) Defendants acted in bad faith (*id.* ¶ 107); and (7) *On Patrol: Live* is a lower quality product (*id.* ¶¶ 62-63).

Defendants' preemption argument is also meritless. The Copyright Act does not preempt unfair competition claims brought under the Lanham Act (Claim V), and neither federal statute preempts a state-law unfair competition claim seeking to protect trademark rights (Claim VII). *See MyPlayCity, Inc. v. Conduit Ltd.*, 2012 WL 1107648, at *24 (S.D.N.Y. Mar. 30, 2012).

For the foregoing reasons, Plaintiff believes Defendants' motion has no chance of success. In any event, to the extent Defendants are using the motion to delay discovery, the Court should deny a stay. *Rep. of Turkey v. Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018) (discovery "should not be routinely stayed simply on the basis that a motion to dismiss has been filed").

**Weil, Gotshal & Manges LLP**

Respectfully submitted,

*/s/ David L. Yohai*

David L. Yohai


Cc: All counsel of record via ECF

4