# Exhibit 1



235 E. 45TH STREET NEW YORK, NY 10017
www.aetn.com

As of July 29, 2016                                                                          **CONFIDENTIAL**

Big Fish Entertainment LLC
609 Greenwich Street
Seventh Floor
New York, NY 10014

RE:  **LIVE PD (working title) – Series**
     PAC # 30402

Ladies and Gentlemen:

This will acknowledge and confirm the terms to which **Big Fish Entertainment LLC**, a Maryland limited liability company ("Producer"), and **A&E Television Networks, LLC**, a Delaware limited liability company ("AETN"), have agreed with respect to the above-referenced series, and specifically, eight (8) episodes, each three (3) hours in commercial telecast length (each an "Episode", and collectively, the "Series"), to be produced by Producer (along with a one (1) hour "Cut Down Version" of each Episode) for AETN under this production agreement (this "Agreement") for anticipated initial exhibition over AETN's television networks ("Networks").  The Series shall be shot in *high definition television format*.

1. TERM:    The term of this Agreement ("Term") shall commence on the date hereof and continue for so long as AETN shall have any rights in the Series.

2. OWNERSHIP & DISTRIBUTION:    a.    AETN shall be the sole owner in perpetuity throughout the universe, exclusively, of any and all rights (including without limitation copyright and trademark), in and to the Series, including but not limited to all newly created elements thereof (e.g., all originally shot footage, interviews, and commissioned music[1]), the format, the title thereof and any associated Internet domain names, the shooting script, preliminary versions and drafts of the script, publicity materials, and any Series outtakes[2]; and AETN may use or exploit the same and all ancillary and subsidiary rights therein in any manner and in any media (whether now known or created in the future) including, but not limited to: standard television and non-standard television (e.g., transmission via pay or non-pay cable, microwave, multipoint distribution service (MDS), satellite master antenna television system (SMATV), direct broadcast satellite (DBS), and transmission directly to so-called "backyard" TVRO

---

[1] A sample composer agreement is included in Schedule A, attached hereto and made a part hereof.
[2] For purposes of this Agreement, 'outtakes' means all of Producer's originally shot photographs and footage (e.g., location, interviews, etc.), and acquisition/source masters (including graphics) relating to, or associated with, the Series.

10493981.3
222591-10051

Document Number: 298283

receiving dishes, online or wireless computer networks and similar transmissions, pay television, video-on-demand, pay-per-view, and "superstations" such as WTBS, and any transmission technology developed in the future), network television, television syndication, mobile, radio, theatrical, non-theatrical, "Videogram" (defined hereafter), publishing and merchandising without making any payment to Producer or any third parties whatsoever, except as specifically set forth herein.

b.  The term "Videogram" as used herein shall mean video cassette, video disc, and all other video device forms and configurations, including any and all digital and/or linear play and non-linear play interactive devices or technologies whether now known or hereafter developed, including download-to-own rights (e.g., iTunesDTO, AmazonDTO, and MobileDTO).

c.  In the event that, prior to the date of this Agreement, Producer filed any trademark applications or registered any internet domain names in connection with the Series, Producer shall assign in writing any and all of Producer's rights in and to those applications and/or domain names to AETN and execute all documents necessary to perfect such rights in AETN. Hereafter during the Term, Producer shall not file any trademark applications or register any Internet domain names in connection with the Series without the prior written consent of an AETN officer.

d.  The Series, including but not limited to all newly produced elements thereof (e.g., all originally shot footage, interviews, and commissioned music, if any), and any related materials (the "Materials") shall be considered works made-for-hire under the United States Copyright Act of 1976, as amended. If the Materials (including but not limited to the shooting script, preliminary versions of that script, and publicity materials) are not deemed works made-for-hire, Producer hereby assigns to AETN all of Producer's rights (including but not limited to copyright) in them and further agrees that AETN shall have all right, title, and interest therein, including the sole and exclusive right to use, convey, and authorize others to use them for any and all purposes whatsoever and in any and all media now known or developed in the future throughout the world in perpetuity, without limitation or restriction except as otherwise provided herein. Producer shall not claim to have either under this Agreement or otherwise, any right, title or interest of any kind or nature in the Materials, and Producer expressly waives any so-called "moral rights" which may now be in

or may hereafter come into existence.

e.  Notwithstanding the foregoing, any and all material including, without limitation, archival footage, television footage, movie footage, photographs, illustrations and licensed music ("Third-Party Materials") included in the Series which is owned or controlled by third parties (i.e., individuals, corporations, libraries and other entities licensing Third-Party Materials to Producer for inclusion in the Series), shall remain under the sole ownership, copyright and control of such respective third parties, subject to AETN's right to use such Third-Party Materials in accordance with this Agreement.

f.  Producer is prohibited from authorizing the telecast of any program(s) produced by Producer substantially similar in content and format to the Series (i.e., a "live"[3] television series following police units around the country, with hosts in studio to guide the action, and pre-produced packages about the cops/areas/hot cases during moments of quiet) until the end of the one (1) year period commencing on delivery of the telecast master of the final Episode produced and delivered by Producer hereunder without AETN's prior written consent, except as specifically permitted pursuant to the terms hereof.

g.  Producer acknowledges that AETN must pre-approve in writing all third-party licenses for music, including library music (but specifically excluding Extreme Production Music, with whom AETN has a blanket master & synchronization licensing agreement, and Scoreganics, AETN's production music library), prior to Producer's execution of any such license (Producer shall send such licenses to the Manager, Music Services, Stephen Saperstein [stephen.saperstein@aenetworks.com]).

h.  Theme music (including, but not limited to, cold or graphic opens) and bumper music for the Series, and each Episode (each of "Series" and "Episode" defined hereafter), shall be commissioned on AETN's behalf. Any programming for at least a one (1) hour format shall contain a minimum of two (2) or three (3) AETN-owned music cues (i.e., each cue shall be background/atmospheric music averaging two [2] minutes in length.) There shall be no exceptions to this obligation unless a

---

[3] Although the Series will be presented and qualify as a "live" production, the initial telecast of each Episode will be on at least a ten (10) minute delay based on the legal risk analysis for the Series.

As of July 29, 2016  
LIVE PD (wt) – Series  
Big Fish Entertainment LLC  
PAGE 4 of 46

CONFIDENTIAL

written waiver (email sufficient) is obtained from an AETN Programming officer (i.e., Senior Vice President level or higher).

i. Producer will use commercially reasonable efforts to ensure that the title of the Series is appropriately cleared for use as contemplated herein if such title is clearable pursuant to applicable United States law (and Producer will be responsible for all costs and expenses related to such clearance insofar as such costs and expenses are within the budget of the Series), and a copy of all title and/or trademark searches (including legal opinions) shall be included in the Rights Bible (as defined hereafter), <u>and</u>, upon receipt, copies shall be sent to Christian Palmieri, AETN's Intellectual Property Counsel [Christian.palmieri@aenetworks.com]. AETN acknowledges that, if Producer clears a title at AETN's request and AETN subsequently notifies Producer that AETN wishes to use a different title for the Series, then either (i) AETN shall clear that title, or (ii) Producer shall clear the title with AETN reimbursing Producer for the additional clearance(s).

3. RIGHTS BIBLE/ MINIMUM RIGHTS:

a. **Notwithstanding anything contained in subparagraphs 3.b., 3.c. and 3.d. below, Producer acknowledges that Producer will use commercially reasonable efforts, within the limits of the Series budget, to clear all archival Third Party Material included in the Series for perpetual worldwide use in the Series in all media by AETN.**

b. Producer shall clear all Third Party Materials included in the Series for use in the context of the Series in connection with the exploitation of AETN's exhibition and distribution rights with respect to the Series throughout the world in any and all media for at least the first ten (10) years of the Term ("Minimum Rights"). Producer acknowledges that any exception to the Minimum Rights must be approved by AETN in writing prior to Producer's delivery of the Rights Bible (defined below).

c. Producer shall exercise commercially reasonable efforts to obtain continuing options ("Rights Options") of at least ten (10) years to increase the Minimum Rights by time, territory and/or media, for specific fees ("Rights Fees"), which shall be exercisable and payable directly by AETN.

d. As part of the Rights Bible (defined in Paragraph 18.b.), Producer shall deliver to AETN a full and complete written

Document Number: 298283

As of July 29, 2016
LIVE PD (wt) – Series
Big Fish Entertainment LLC
PAGE 33 of 46

CONFIDENTIAL

    d. This Agreement may be signed in counterparts, each of which, when executed and delivered, is an original (but both counterparts together constitute the same document). Executed copies of the signature pages in this Agreement sent by facsimile or transmitted electronically in portable document format ("PDF") shall be treated as originals, fully binding and with full legal force and effect, and the parties waive any rights they may have to object to such treatment.

WHEN A COPY OF THIS AGREEMENT SIGNED BY AN OFFICER OF PRODUCER AND COUNTERSIGNED BY AN AETN OFFICER HAS BEEN RECEIVED BY EACH PARTY, THIS DOCUMENT SHALL CONSTITUTE A VALID AND BINDING AGREEMENT BETWEEN THE PARTIES REGARDING THE SERIES.

Please sign below to indicate your acceptance of the foregoing and return a signed copy of this Agreement to AETN to the attention of Cliff Milburn, Attorney, Legal & Business Affairs, A&E Television Networks, LLC.

Very truly yours,

A&E TELEVISION NETWORKS, LLC

By: _____
David Granville-Smith
Executive Vice President &
Chief Financial Officer

Date: 8-29-2016

ACCEPTED AND AGREED:
BIG FISH ENTERTAINMENT LLC

By: _____

Name: Daniel Cesareo

Title: Managing Member

Federal I.D. #: 06-1784546

Document Number: 298283