UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
――――――――――――――――――――――――――x
                                            :
A&E TELEVISION NETWORKS, LLC,               :
                                            :
           Plaintiff,                       :
                                            :
     v.                                     :     Civil Action No. 1:22-cv-07411
                                            :
BIG FISH ENTERTAINMENT, LLC,                :     **ORAL ARGUMENT REQUESTED**
HALF MOON PICTURES, LLC, and                :
REELZCHANNEL, LLC,                          :
                                            :
           Defendants.                      :
――――――――――――――――――――――――――x


# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Orin Snyder
Alexandra Perloff-Giles
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 351-4000
OSnyder@gibsondunn.com
APerloff-Giles@gibsondunn.com

Jay P. Srinivasan
Ilissa Samplin
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel: (213) 229-7354
JSrinivasan@gibsondunn.com
ISamplin@gibsondunn.com

*Counsel for Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................................................... 1

ARGUMENT .................................................................................................................................... 2

    I.    Copyright Does Not Protect the Content and Format A&E Claims Was Infringed. .......... 2

    II.   The Plain Language of the Series Agreement Undermines A&E's Copyright Claims. ..... 6

    III.  A&E's Trademark and Unfair Competition Claims Should Be Dismissed ....................... 7

# TABLE OF AUTHORITIES

**CASES**

*Abdin v. CBS Broad. Inc.*,
   971 F.3d 57 (2d Cir. 2020) ................................................................................................. 3

*Acuff–Rose Music, Inc. v. Jostens, Inc.*,
   155 F.3d 140 (2d Cir. 1998) ............................................................................................... 3

*Barris/Fraser Enters. v. Goodson-Todman Enters., Ltd.*,
   1988 WL 3013 (S.D.N.Y. Jan. 4, 1988) ............................................................................. 5

*Betty, Inc. v. PepsiCo, Inc.*,
   283 F. Supp. 3d 154 (S.D.N.Y. 2017) ................................................................................ 4

*Canal+ Image UK Ltd. v. Lutvak*,
   773 F. Supp. 2d 419 (S.D.N.Y. 2011) ................................................................................ 6

*Castorina v. Spike Cable Networks*,
   784 F. Supp. 2d 107 (E.D.N.Y. 2011) ............................................................................... 6

*Claton v. UMG Recordings, Inc.*,
   556 F. Supp. 3d 322 (S.D.N.Y. 2021) ................................................................................ 6

*De Becdelievre v. Anastasia Musical LLC*,
   2018 WL 1633769 (S.D.N.Y. Apr. 2, 2018) ...................................................................... 5

*Disney Enters., Inc. v. Sarelli*,
   322 F. Supp. 3d 413 (S.D.N.Y. 2018) .............................................................................. 10

*Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co., Inc.*,
   2022 WL 17851810 (S.D.N.Y. Dec. 22, 2022) .................................................................. 8

*Fuzzy Logic Prods., Inc. v. Trapflix, LLC*,
   2015 WL 12791508 (C.D. Cal. Nov. 20, 2015) ................................................................. 3

*Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co., Inc.*,
   509 F.2d 64 (2d Cir. 1974) ................................................................................................. 4

*Horizon Comics Prods., Inc. v. Marvel Entm't, LLC*,
   246 F. Supp. 3d 937 (S.D.N.Y. 2017) ................................................................................ 5

*Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*,
   808 F. Supp. 2d 542 (S.D.N.Y. 2011), *aff'd sub nom*, 500 F. App'x 42 (2d Cir. 2012) ............ 6

*Keeling v. Hars*,
   809 F.3d 43 (2d Cir. 2015) ................................................................................................. 4

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*,
    71 F.3d 996 (2d Cir. 1995)..................................................................................................5

*LaChapelle v. Fenty*,
    812 F. Supp. 2d 434 (S.D.N.Y. 2011)..................................................................................5

*Lone Wolf McQuade Assocs. v. CBS Inc.*,
    961 F. Supp. 587 (S.D.N.Y. 1997) ......................................................................................4

*Matthew Bender & Co, Inc. v. W. Publ'g Co.*,
    158 F.3d 674 (2d Cir. 1998)..................................................................................................4

*NYC Triathlon, LLC v. NYC Triathlon Club, Inc.*,
    704 F. Supp. 2d 305 (S.D.N.Y. 2010)..................................................................................8

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010)....................................................................................................6

*ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*,
    314 F.3d 62 (2d Cir. 2002)....................................................................................................8

*Shull v. TBTF Prods Inc.*,
    2019 WL 5287923 (S.D.N.Y. Oct. 4, 2019) ........................................................................6

*Star Indus., Inc. v. Bacardi & Co. Ltd.*,
    412 F.3d 373 (2d Cir. 2005)..................................................................................................8

*Tecnimed SRL v. Kidz-Med, Inc.*,
    763 F. Supp. 2d 395 (S.D.N.Y. 2011)................................................................................10

*Tiffany (NJ) Inc. v. eBay, Inc.*,
    600 F.3d 93 (2d Cir. 2010)..................................................................................................10

*Toni & Guy (USA) Ltd. v. Nature's Therapy, Inc.*,
    2006 WL 1153354 (S.D.N.Y. May 1, 2006) ....................................................................10

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*,
    338 F.3d 127 (2d Cir. 2003)..................................................................................................4

*Viahart, LLC v. Creative Kids Online, LLC*,
    2022 WL 836431 (S.D.N.Y. Mar. 18, 2022) ......................................................................8

*Walker v. Time Life Films, Inc.*,
    784 F.2d 44 (2d Cir. 1986)....................................................................................................3

*Yurman Design, Inc. v. PAJ, Inc.*,
    262 F.3d 101 (2d Cir. 2001)..................................................................................................2

*Zalewski v. Cicero Builder Dev., Inc.*,
    754 F.3d 95 (2d Cir. 2014)..................................................................................................4, 6

Defendants Big Fish Entertainment LLC ("Big Fish"), Half Moon Pictures LLC ("Half Moon"), and REELZChannel, LLC ("REELZ") respectfully submit this memorandum in further support of their motion to dismiss Plaintiff A&E Television Networks, LLC's ("A&E") complaint.

## PRELIMINARY STATEMENT

A&E's opposition fails to save its legally deficient copyright and trademark infringement claims, and only confirms that this case should be dismissed with prejudice for the reasons set forth in Defendants' motion to dismiss. A&E's copyright claims ring hollow given its request for dismissal in a prior case in this District based on the principle that "a collection of stock ideas and scenes a faire commonly found in reality television shows" are not protectable under the Copyright Act, citing "a host" and "interviews," among other things, as examples of the types of unprotected "scenes-a-faire of reality television." A&E's Reply in Supp. of Mot. to Dismiss, *Williams v. A&E Television Networks, et al.*, No. 14-cv-9894, ECF No. 41 at 5 (S.D.N.Y. July 1, 2015). This settled copyright principle applies with full force here, and requires dismissal of A&E's copyright claims because they rest on generic and stock elements—such as multiple hosts, interview segments, "fast-paced percussive music that builds in intensity," "all-capitals and block font" titles, and stock phrases like "let's take a break." Opp. at 14–15. A&E cannot save its copyright claims by proclaiming that these generic elements gain protection when viewed in combination. Binding Second Circuit law holds that obvious arrangements of such generic elements—like the combination of conventional unscripted television concepts and police department activity alleged here—are not sufficiently creative to be protected.

Of course, A&E knows the content and format of *Live PD* are not protectable by copyright because it admitted as much in the parties' Series Agreement. The agreement imposed a one-year embargo on Big Fish from producing a show "substantially similar in content and format" to *Live*

1

*PD*.  If the content and format of *Live PD* were protectable under copyright law, A&E would not have bargained for a contractual embargo right, which reflects the mutual awareness that A&E otherwise could not have prevented Big Fish from making a substantially similar show for another network.  A&E negotiated for a one-year embargo because it knew that an unscripted show recording police in real time was not subject to copyright protection—and that Big Fish was free to bring it to another television platform.

A&E's trademark and unfair competition claims also fail.  A&E concedes the only word common to both marks—"live"—is generic and not protectable.  A&E also attacks a straw man in challenging Defendants' abandoned working title *PD Live*, which could not have caused consumer confusion because it was never used with consumers.  And under the nominative fair use doctrine, Big Fish is free to refer to *Live PD*, the show it created, to truthfully inform the public that the *Live PD* team moved to a new network.  The Court should dismiss A&E's complaint with prejudice.

## ARGUMENT

### I. Copyright Does Not Protect the Content and Format A&E Claims Was Infringed.

In response to Defendants' showing that the alleged similarities between the two shows are generic and not protectable, A&E misleadingly says Defendants "avoid[] comparing the two shows." Opp. at 2.  In fact, Defendants spent pages addressing each element across both shows wrongly identified in paragraph 57 of the complaint as protectable by copyright.  Mot. at 7–12.[1]

A&E knows that, to state a copyright infringement claim, its complaint must plausibly allege substantial similarity "between the defendant's work and the *protectable elements of plaintiff's work*." Opp. at 7 (alterations omitted) (emphasis added) (citing *Yurman Design, Inc. v.*

---

[1] As just one example, Defendants presented screenshots showing that the hosts do not appear in the same order, Mot. at 9, which A&E ignored in stating that "[i]n both shows, Mr. Abrams stands left of the table, Mr. Larkin sits in the middle, and the third host sits on the right," Opp. at 15.

2

*PAJ, Inc.*, 262 F.3d 101, 110 (2d Cir. 2001)).  Generic elements of the type alleged by A&E—such as "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic"—are not protectable and must be excluded from the substantial similarity analysis.  *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (citation omitted).  In the same vein, the allegedly similar elements A&E calls "creative expression" are not protectable either—for example, federal copyright law:

- does not prevent television hosts from moving to a different program, *see Fuzzy Logic Prods., Inc. v. Trapflix, LLC*, 2015 WL 12791508, at *4 (C.D. Cal. Nov. 20, 2015) ("identity of the actors" was "unprotectable"); *contra* Opp. at 8, 16, or guests from appearing on multiple news programs, *contra* Opp. at 13–1 (Angeline Hartmann from the National Center for Missing and Exploited Children featured on both shows);[2]

- does not confer exclusive rights over a phone number to report missing persons, *contra* Opp. at 14, any more than it does over the suicide hotline or 911;

- does not protect stock phrases like "[l]et's take a good look," "we'll keep an eye on that" ("before transitioning to something else"), "let's take a break" (before commercials), or "[w]e are out of time," Opp. at 14-15; *Acuff–Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 143–44 (2d Cir. 1998) ("you've got to stand for something, or you'll fall for anything" deemed unprotectable);

- does not protect the choice to focus on a "specific law enforcement department[]," Opp. at 9; *see Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986);

- does not protect the use of capital letters or sans-serif fonts for maximum legibility, *compare* Mot. at 7–8, *with* Opp. at 15; and

- does not protect the use of "fast-paced, percussive music."  *Compare* Mot. at 7, *with* Opp. at 15.

When these unprotected elements are excluded, any given episode of *Live PD* naturally differs significantly from any episode of *On Patrol: Live*, since each covers different live incidents.  *See* Compl. ¶ 32;  *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986) (looking to differences between the book and film, once "stock" elements of the police genre are excluded).

Recognizing this fatal problem, A&E falls back on a mushy "look and feel" argument for protection, declaring that its "selection, coordination, and arrangement" of these unprotectable

---

[2] A&E's two-page comparison of *Live PD*'s and *On Patrol: Live*'s "Missing" segments, Opp. at 12–14, goes outside the pleadings and is not appropriate on a motion to dismiss in any event.

3

elements is subject to copyright protection. Opp. at 8–11. As the Second Circuit cautioned in a case on which A&E relies, it is "relatively unusual" for a selection or aggregation of choices to be entitled to copyright protection. *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 136 (2d Cir. 2003); *see also Matthew Bender & Co, Inc. v. W. Publ'g Co.*, 158 F.3d 674, 682 (2d Cir. 1998) ("[N]ot every such compilation or decision on selection or arrangement is sufficiently creative to be protected."). This is not that "relatively unusual" case.

The "relatively unusual" case typically involves "aesthetic expressions," not news or documentary programming. *Tufenkian*, 338 F.3d at 134; *accord, e.g.*, *Betty, Inc. v. PepsiCo, Inc.*, 283 F. Supp. 3d 154, 170 (S.D.N.Y. 2017) ("unique combination of elements" in story about "the human representation of what a jukebox could be"); *Keeling v. Hars*, 809 F.3d 43, 51 (2d Cir. 2015) (theater director's selection and arrangement of parodic elements, e.g., random audience member playing lead and use of squirt guns for waves); *Lone Wolf McQuade Assocs. v. CBS Inc.*, 961 F. Supp. 587, 594 (S.D.N.Y. 1997) ("carefully selected character traits" in fictional movie). Where, as here, the compilation, selection, or arrangement is "obvious, garden-variety, or routine" and does not entail "making non-obvious choices from among more than a few options," it is not protectable. *Matthew Bender*, 158 F.3d at 682–83.[3]

A&E itself describes the unoriginal elements that make up the "total look and feel" of *Live*

---

[3] A&E does not dispute that "the idea of elements such as live footage of particular police departments toggling between live police patrol action and studio commentary by the show's hosts and interspersed with weekly 'segments' are common in police reality shows." Opp. at 8. While it says it seeks to protect the "expression" of that idea, the similarities A&E points to (e.g., "fast-paced music") comprise the idea itself, *see, e.g.*, *Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co., Inc.*, 509 F.2d 64, 65 (2d Cir. 1974) ("A jeweled bee pin is . . . an 'idea' that defendants were free to copy.") (citation omitted), or, at a minimum, are unprotectable under the merger doctrine because granting exclusive rights, for example, in segments on "Wanted" or "Missing" persons would essentially grant a monopoly over television about police activity, *see Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 102 (2d Cir. 2014).

4

*PD*—"fast-paced music," hosts in front of screens commenting on the action, the phrase "let's take a break" to "transition[] to commercial," Opp. at 15—as conventionally combined to look like a garden-variety news/documentary-style program, Mot. at 14. There is no allegation of some unique or creative choice in the manner in which these generic elements were presented. Even the "Missing" segment highlighted in A&E's opposition (but not alleged in the complaint) does little more than recite the details one sees on any milk carton. *See* Opp. at 12–14 ("photo of the missing child," the "MISSING" title, "the date the child was last seen," and "a description of the child's age, eye color, hair color, height and weight").

The cases that A&E cites are inapposite. In each, the plaintiff alleged original elements alone or in combination, unlike "Missing" and "Wanted" persons segments in a show about police, or hosts in front of screens commenting on the action in unscripted, news-style programming. *See, e.g.*, *LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 445–46 (S.D.N.Y. 2011) (Opp. at 9) ("windows with glossy hot-pink casings and interior framework, with opaque panes exhibiting a half-vector pattern of stripes against a yellow background," "women wearing frizzy red wigs," and "woman's mouth open and a small object on her tongue" were protectable); *Horizon Comics Prods., Inc. v. Marvel Entm't, LLC*, 246 F. Supp. 3d 937, 943–44 (S.D.N.Y. 2017) (Opp. at 10) ("blue lights in the chest plate of the suit" and "notches in the shoulder" were protectable); *De Becdelievre v. Anastasia Musical LLC*, 2018 WL 1633769, at *9–10 (S.D.N.Y. Apr. 2, 2018) (Opp. at 12) (highly specific plot points entitled to protection); *Barris/Fraser Enters. v. Goodson-Todman Enters., Ltd.*, 1988 WL 3013, at *5 (S.D.N.Y. Jan. 4, 1988) (Opp. at 10) ("subject of deception" was "the person's occupation, hobby, or accomplishment," which gets exposed through open-ended questions). And as one court in this District explained, *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996 (2d Cir. 1995) (Opp. at 9), "did not address the issue of copyrightability," and focused

5

solely on substantial similarity.  *Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 808 F. Supp. 2d 542, 551 (S.D.N.Y. 2011), *aff'd sub nom*, 500 F. App'x 42 (2d Cir. 2012).  The "total concept and feel" of *Live PD* is not the product of creative choices, but rather standard the "conventions" of police activity and unscripted television, in which A&E "cannot claim copyright" protection.  *Zalewski*, 754 F.3d at 106.

Because the selections and arrangements of the generic elements at issue are obvious, garden variety displays that do not reflect "original creative expressions" of any kind, A&E's copyright claims fail, and should be dismissed as a matter of law.  *Castorina v. Spike Cable Networks*, 784 F. Supp. 2d 107, 112 (E.D.N.Y. 2011); *see, e.g.*, *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63–64 (2d Cir. 2010) ("appropriate for a district court to resolve" infringement claim "as a matter of law" and "at the pleadings stage on a motion to dismiss," where "similarity between two works concerns only non-copyrightable elements"); *Claton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 334 (S.D.N.Y. 2021) (dismissing copyright infringement claim based on lack of protectability); *Shull v. TBTF Prods Inc.*, 2019 WL 5287923, at *14 (S.D.N.Y. Oct. 4, 2019) (same); *Canal+ Image UK Ltd. v. Lutvak*, 773 F. Supp. 2d 419, 428–41 (S.D.N.Y. 2011) (same).

## II.   The Plain Language of the Series Agreement Undermines A&E's Copyright Claims.

Section 2(f) of the Series Agreement limits Big Fish from producing a show "substantially similar in content and format" to *Live PD* for only one year after A&E cancelled it.  Snyder Decl. Ex. 1 § 2(f).  The only plausible explanation for including this one-year embargo provision— which operates solely to benefit A&E—is that A&E knows the content and format of *Live PD* are not protectable under the Copyright Act.  A&E offers three reasons the Court should ignore this contract, none of which is persuasive.

First, A&E says the Series Agreement "does not grant Big Fish or any other party an express or implied license." Opp. at 17.  A license would be necessary only if the material were protectable under copyright law.  That there is a limited prohibition for A&E's benefit rather than a license for Big Fish's benefit underscores only *Defendants'* argument.

Second, A&E says Section 2(f) is "inapplicable . . . because *On Patrol: Live* is not merely substantially similar to *Live PD*, but virtually identical." Opp. at 17.[4]  The Agreement defines "substantially similar":  "a 'live' television series following police units around the country, with hosts in studio to guide the action, and pre-produced packages about the cops/areas/hot cases during moments of quiet." Snyder Decl. Ex. 1 § 2(f).  *On Patrol Live* falls squarely in this definition, which A&E concedes.  *See* Opp. at 16; *id.* at 4.

Third, A&E observes that Half Moon and REELZ are not parties to the Series Agreement. Opp. at 17.  This fact simply does not matter.  *See* Opp. at 17.  It does not.[5]  What matters is that A&E was a party to the Series Agreement and thus understood when it opted not to renew *Live PD* that the show's producers could produce a "substantially similar" show for a third-party network after one year.

### III.   A&E's Trademark and Unfair Competition Claims Should Be Dismissed

*Live PD* and *On Patrol: Live* have one, generic word in common, and A&E concedes it has no valid trademark in the word "Live." Opp. at 19.  This defeats A&E's pleaded trademark claim.

In its opposition, A&E pivots to say its trademark claim is actually based on Defendants' brief use of the working title *PD Live*. *Id.* at 18.  But nowhere in its complaint does A&E allege

---

[4] In fact, the shows are not "identical" because they are *live* shows dealing with different incidents to which the police are responding.  *See* Compl. ¶ 32.  To the extent the Court considers the footage submitted by A&E with its opposition, it is further evident that *On Patrol: Live* is not "identical" to *Live PD* given the differences in, among other things, theme songs, logos, and dialogue.

[5] Half Moon is a Big Fish subsidiary in any event.

that temporarily using *PD Live* caused A&E's alleged harm. As a background allegation, A&E alleges Defendants briefly used *PD Live* as the working title for their new show while pitching the show "to advertisers," but ultimately changed the title, *see* Compl. ¶ 107. The relevant inquiry is whether "consumers are likely to be confused," *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 384 (2d Cir. 2005), and A&E does not allege *PD Live* was ever exposed to consumers at all.[6]

A&E also focuses on Defendants' alleged use of A&E's show, *Live PD*, to promote Defendants' show, *On Patrol: Live*. Opp. at 19. A&E fails to grapple with the factual allegations of its complaint, which establish all three elements of the nominative fair use doctrine:

It was necessary for Defendants to use the LIVE PD mark when marketing *On Patrol: Live* to convey to fans that the creators of the show they knew by a particular name on a particular network were launching a new show on a new network with a new name. A&E says Defendants could have done this without using *Live PD*'s name to identify the creators' prior work, which does not stand to reason and A&E offers no explanation in support. *See id.* at 24.

A&E argues Defendants made *Live PD* the "centerpiece of their deceptive marketing campaign." *Id.* But A&E alleged only that (1) certain media made the connection between the two shows and the host issued a few tweets about his move from one show to the other, Compl. ¶¶ 38–44, and (2) "REELZ was stating privately to advertisers and media industry personnel" that

---

[6] A&E's contention that "stopping an infringement when you are caught does not cure the initial bad faith," Opp. at 23, is contrary to established case law. "[R]esponding to [a cease and desist] letter" with a "proposal to change [a] name"—as A&E alleges Defendants did, Compl. ¶ 52 (in fact, the name was changed before the cease and desist letter was received)—is emblematic of "good faith," not bad faith. *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 68–69 (2d Cir. 2002). A&E's cases, which involved a failure to change the name, *NYC Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 319 (S.D.N.Y. 2010), cease using the allegedly infringing name, *Viahart, LLC v. Creative Kids Online, LLC*, 2022 WL 836431, at *11 (S.D.N.Y. Mar. 18, 2022), or otherwise desist from the infringing activity, *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co., Inc.*, 2022 WL 17851810, at *74 (S.D.N.Y. Dec. 22, 2022), in response to a cease-and-desist letter, are inapposite.

certain talent and staff involved with *Live PD* were part of *On Patrol: Live*, *id.* ¶ 15. This is hardly the "centerpiece" of a marketing campaign—and certainly not "excessive" under the nominative fair use test. Mot. at 22. In fact, there is no allegation that the LIVE PD mark was used by Defendants in any advertising campaign, let alone a consumer-facing one.

A&E does not point to any allegation in the complaint averring that Defendants suggested A&E endorsed or was affiliated with *On Patrol: Live*. Nor could it, because the allegations are to the contrary—A&E alleges Defendants touted that *On Patrol: Live* could be found on a new network and ***not*** on A&E. Compl. ¶¶ 37, 46. In truth, Defendants were highly incentivized to make clear to consumers that A&E was *not* the source of *On Patrol: Live* so that viewers could find the show on REELZ. Mot. at 20, 25.

A&E's opposition likewise does not save its failure to plead a plausible likelihood of consumer confusion under the *Polaroid* test:

- Strength and similarity of the marks: A&E says the critical inquiry is whether a "consumer who is familiar with the plaintiff's mark would likely be confused when seeing the defendant's mark alone." Opp. at 21. The allegation in the complaint is the opposite: that no one would associate *On Patrol Live*, on its own, with *Live PD*, and that Defendants instead had to "deliberately foster[] the misperception that *On Patrol: Live* was a continuation of *Live PD*." Compl. ¶ 40.
- Competitive proximity and bridging the gap: The relevant question is the degree to which the shows compete and the likelihood A&E "will enter the junior user's market in the future, or that consumers will perceive the senior user as likely to do so." Mot. at 19. There is no allegation in the complaint that A&E currently has a competitive unscripted police reality show, that it intends to create its own police reality show, or that consumers expected them to do so. The only germane allegation is that A&E cancelled *Live PD* with no intention of airing it again. Compl. ¶¶ 2, 43–44, 57. A&E says the fact that the two programs are "cable television programs" is enough to satisfy this prong. Opp. at 22. A&E cites no authority in support, and ignores that *Live PD* is no longer a cable television program since its cancellation nearly three years ago. *See* Compl. ¶ 31 (alleging *Live PD* aired on the A&E Network from 2016–2020).
- Actual confusion: None of A&E's allegations of "actual confusion" evince any confusion as to what network airs *On Patrol: Live*, or even mention A&E in connection with either program. *See* Opp. at 5, 22-23. To the contrary, A&E alleges that 3.5 million viewers knew, as of the very first telecast, that *On Patrol: Live* was on REELZ. *See* Compl. ¶ 63.
- Bad faith: Defendants' decision to use the name *On Patrol: Live*, rather than *PD Live*, evinces good faith, not bad faith. *See supra* note 5.

9

- Consumer sophistication:  Viewers of *On Patrol: Live*, whom A&E alleges know the name of the primary host and recognize him from *Live PD*, *see* Compl. ¶ 62, are relatively sophisticated Mot. at 20-21; *see also, e.g.*, *Disney Enters., Inc. v. Sarelli*, 322 F. Supp. 3d 413, 438 (S.D.N.Y. 2018) (factor favored defendants in trademark infringement action over Star Wars characters).

A&E's trademark claim boils down to allegations that Big Fish and certain of *On Patrol: Live*'s hosts were previously involved with *Live PD*—factual representations which do not mislead the public as to the source or origin of any goods or service, but rather provide truthful information to the marketplace.  *See, e.g.*, *Toni & Guy (USA) Ltd. v. Nature's Therapy, Inc.*, 2006 WL 1153354, at *6 (S.D.N.Y. May 1, 2006) (reference to plaintiff's product "serve[d] the 'beneficial purpose of imparting factual information'").[7]  The reality is that consumer confusion is unlikely in the face of factual representations like these, particularly where, as here, Defendants were focused on making clear they had a new show that could be found only on a new network.

Big Fish's understandable desire to discuss its prior work in connection with its current work in the same genre is a "cognizable reason . . . to have referred to the LIVE PD Mark to market *On Patrol: Live*" that has nothing to do with "AETN's goodwill and reputation," Opp. at 24, and therefore is a protected nominative fair use.  *See Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 102 (2d Cir. 2010).  The "whole point of telling the world that [Defendants] were 'bringing back' *Live PD* was" clearly *not* to "mislead them into believing that AETN sponsored or was otherwise affiliated with Defendants'" new show, Opp. at 24–25, which would only have steered potential viewers to the wrong channel, but instead to truthfully suggest to audiences that *On Patrol: Live*, a Big Fish production, would likely appeal to fans of the show, *Live PD*.

A&E's trademark claims should be dismissed, as should its unfair competition claims

---

[7] A&E cites *Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395, 409 (S.D.N.Y. 2011), which found that the defendant "capitaliz[ed] on plaintiff's reputation and good will" by "issu[ing] a misleading press release," and "pass[ing] off" the original product as its own.  Here, Big Fish created both television shows and is not "misleading" anyone by representing as much.

which it concedes are "based upon Defendants' misuse of AETN's trademarks." *Id.* at 25.

| | | |
|---|---|---|
| Dated: | February 3, 2023<br>New York, NY | Respectfully submitted,<br><br>GIBSON, DUNN & CRUTCHER LLP<br><br>By: */s/ Orin Snyder*<br>Orin Snyder<br>Alexandra Perloff-Giles<br>200 Park Avenue<br>New York, NY 10166-0193<br>Tel: (212) 351-4000<br>OSnyder@gibsondunn.com<br>APerloff-Giles@gibsondunn.com<br><br>Jay P. Srinivasan<br>Ilissa Samplin<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>Tel: (213) 229-7354<br>JSrinivasan@gibsondunn.com<br>ISamplin@gibsondunn.com<br><br>*Counsel for Defendants* |