# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

A&E TELEVISION NETWORKS, LLC,

                                    Plaintiff,

            - against -                                                       Index No.: 22-cv-07411

BIG FISH ENTERTAINMENT, LLC, HALF MOON
PICTURES, LLC, and REELZCHANNEL, LLC,

                                    Defendants.

**PLAINTIFF A&E TELEVISION NETWORKS, LLC'S NOTICE OF DEPOSITION**
**PURSUANT TO RULE 30(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**
**TO DEFENDANTS BIG FISH ENTERTAINMENT, LLC AND HALF MOON**
**PICTURES, LLC**

**PLEASE TAKE NOTICE** that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Plaintiff A&E Television Networks, LLC by and through its attorneys, will take the

deposition of the corporate representative(s) of Defendants Big Fish Entertainment, LLC ("Big

Fish") and Half Moon Pictures, LLC ("Half Moon," and together with Big Fish, "Big Fish")

regarding the topics identified in the attached Exhibit A.

The deposition(s) will take place at the offices of counsel for Plaintiff, Weil, Gotshal &

Manges LLP, 767 Fifth Avenue, New York, NY 10153 on February 28, 2024 and February 29,

2024, or at some other time and place if mutually agreed by the parties in writing.  The deposition

will continue from day to day thereafter, except for weekends and holidays, until completed.

The deposition will be recorded by video and stenographic means and will be taken before a

court reporter or other officer authorized by law to administer oaths.

1

2

Dated:  January 5, 2024
        New York, New York

*/s/ David L. Yohai*
David L. Yohai
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Phone:  (212) 310-8000
Fax:  (212) 310-8007
david.yohai@weil.com

*Attorney for Plaintiff AETN*

2

**EXHIBIT A**

**SCHEDULE OF DEPOSITION TOPICS**

**DEFINITIONS AND RULES OF CONSTRUCTION**

1.      The definitions set forth in Rule 34 of the Federal Rules of Civil Procedure and Local Rule 26.3(c) are hereby incorporated by reference, including the definitions of "Communication," "Document," "Identify," "Person," and "Concerning."  In addition:

2.      "**Action**" shall mean the above-captioned action, namely, *A&E Television Networks, LLC v. Big Fish Entertainment, LLC et al.*, 22-cv-07411, pending in the U.S. District Court for the Southern District of New York.

3.      "**AETN**" shall mean A&E Television Networks, LLC and its officers, directors, employees, partners, corporate parents, subsidiaries, or affiliates.

4.      "**You**," "**Your**," and "**Big Fish**" shall mean Big Fish Entertainment, LLC and Half Moon Pictures LLC, and their officers, directors, employees, partners, corporate parents, subsidiaries, or affiliates, and anyone acting on their behalf.

5.      "**REELZ**" shall mean ReelzChannel, LLC and its officers, directors, employees, partners, corporate parents, subsidiaries, or affiliates, and anyone acting on REELZ's behalf.

6.      "***Live PD***" shall mean the television series that aired on A&E® network between 2016 and 2020 and showcased the policing of America by following several police departments from across the country in real time as they patrolled their communities, with hosts in studio describing the action.

7.      "***On Patrol: Live***" shall mean the television series that began airing on REELZ on July 22, 2022, and which showcases the policing of America by following several police departments from across the country in real time as they patrolled their communities, with hosts

3

in studio describing the action. For the avoidance of doubt, all references to "*On Patrol: Live*" shall include any and all other titles or working titles, including any and all spin-offs or derivative works.

8.      "**Series Agreement**" shall mean the agreement by and between Big Fish and AETN dated as of July 29, 2016 and its subsequent amendments.

9.      Unless clearly indicated otherwise: (a) the use of a verb in any tense shall be construed as the use of that verb in all other tenses; (b) the use of the feminine, masculine, or neuter genders shall include all genders; (c) the singular form of a word shall include the plural, and vice versa; (d) the connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of any request all information that might otherwise be construed to be outside of its scope; (e) the word "**any**" shall include, without limitation, "each and every"; (f) the terms "**all**" and "**each**" shall be construed as "all and each"; (g) the term "**including**" is intended to be comprehensive and means "including, but not limited to"; and (h) the terms "**between**" and "**among**" shall be construed as "between" or "among" as necessary to bring within the scope of any request all responses and documents that might otherwise be construed to be outside its scope.

10.      For the purposes of the Deposition Topics, terms not specifically defined shall be given their ordinary meanings as You understand them to be used in the trade or pursuant to ordinary usage.

11.      The use of any definition for the purposes of the Deposition Topics shall not be deemed to constitute an agreement or acknowledgment that such definition is accurate, meaningful, or appropriate for any other purpose in this Action.

4

**INSTRUCTIONS**

1.     Each Deposition Topic shall be construed independently, and no Deposition Topic shall be construed as limiting the scope of any other Deposition Topic unless otherwise indicated.

2.     The witness or witnesses You designate to testify about Deposition Topics identified herein must be prepared to testify to all information known or reasonably available to You, regardless of where the information is maintained, in what form the information is maintained, or whether the  information is maintained by You or by Your predecessors, subsidiaries, parents, and affiliates.

**DEPOSITION TOPICS**

**Topic No. 1**.   The negotiation, drafting, interpretation, and execution of the Series Agreement and its amendments.

**Topic No. 2**.   Communications and negotiations between You, on the one hand, and REELZ, on the other hand, concerning the potential licensing of *Live PD*, and/or any similar show under any other name (such as *PD Live*), and/or *On Patrol: Live*.

**Topic No. 3.**   The negotiation, drafting, interpretation, and execution of any contracts between You, on the one hand, and REELZ, on the other hand, that concern *On Patrol: Live*.

**Topic No. 4**.  Communications and negotiations between You, on the one hand, and AETN on the other hand, concerning licensing *Live PD* or any other law-enforcement related program at any time following *Live PD*'s suspension in June 2020.

**Topic No. 5**.  Communications and negotiations between You, on the one hand, and any television network other than REELZ and AETN concerning potentially licensing *On Patrol: Live*.

**Topic No. 6**.  The creation and development of *On Patrol: Live*.

**Topic No. 7**.   Your decision to produce *On Patrol: Live*, including any alternative television programs concerning law-enforcement that you considered producing.

**Topic No. 8**.  Similarities and differences between *Live PD* and *On Patrol: Live*.

**Topic No. 9**.  The creation of, and the decision to use, the title "*On Patrol: Live*," including any other titles under consideration, and the decision to change the title from "*PD Live*" to "*On Patrol: Live*."

**Topic No. 10.**  Consumer or public confusion between *Live PD* and *On Patrol: Live.*

**Topic No. 11**.  Your role in the production of *Live PD*, including your relationship with AETN and your access to the various production elements of *Live PD.*

**Topic No. 12**.   The recruitment of personnel for *On Patrol: Live*, including Dan Abrams, Sean Larkin, Curtis Wilson, and Tom Morris, Jr.

**Topic No. 13**.  Your Communications with law enforcement departments concerning their participation in *On Patrol: Live*.

**Topic No. 14**.  Your choices and decisions in producing the segments and features in *On Patrol: Live*, including the segments titled "Crime of the Week," "Missing," "Wanted," and "Wanted List."

**Topic No. 15**.  Your choices and decisions in producing the components or characteristics of *On Patrol: Live*, including wardrobe, narration, music selection, use of catch phrases by the hosts, and seating arrangements for the hosts.

**Topic No. 16**.  Your choices and decisions in using the titles, subtitles, supertitles, captions, taglines, fonts, maps, color palettes, credits, and other graphical elements in *On Patrol: Live*.

**Topic No. 17**.  Your choices and decisions concerning the camera angles, motion theory, and transitions in *On Patrol: Live*.

**Topic No. 18**.  The marketing, advertising, and promotion of *On Patrol: Live* by You, anyone working on Your behalf, or REELZ, including without limitation any press releases, social media posts, "retweets," interviews or articles about *On Patrol: Live* both before and after its launch.

**Topic No. 19**.  Your decision to continue producing *On Patrol: Live* despite the cease-and-desist letters Your counsel received from counsel for AETN on June 7, 2022 and July 20, 2022.

**Topic No. 20**.  Your understanding of who owns the copyrights, trademarks, or other intellectual property in either *Live PD* or *On Patrol: Live*.

**Topic No. 21**.  Plans for spin offs or derivative sequels to *On Patrol: Live*.

**Topic No. 22**.  The creation or development of cut down, shortened, or abridged versions of *On Patrol: Live*, or any plans for same.

**Topic No. 23**.  Your actual and expected revenues and profits from *On Patrol: Live*, including without limitation from any cut down, shortened, or abridged versions of the show, on a monthly, quarterly, and yearly basis, including Your production fees and each and every other revenue category and profit source that is attributable in whole or in part to *On Patrol: Live*.

**Topic No. 24**.  Your costs and expenses in connection with each episode of *On Patrol: Live* and any cut down, shortened, or abridged versions of *On Patrol: Live*.

**Topic No. 25**.  Payments made by REELZ to You concerning *On Patrol: Live*.

**Topic No. 26**.  Any financial documents You have produced in this Action.

**Topic No. 27**.  Your process for collecting and searching for documents in response to AETN's First and Second Sets of Requests for Production of Documents to Big Fish.

**Topic No. 28**.  Your defenses to this Action.

8

**Topic No. 29**.    Your corporate structure and organization, including Your affiliates, parents, and subsidiaries, as well as the corporate relationship between Big Fish and Half Moon.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 5, 2024, I caused a true and correct copy of the foregoing to be served via e-mail addressed to the following, in accordance with the agreement of the parties to accept service via email:

Orin Snyder
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
OSnyder@gibsondunn.com

Jay P. Srinivasan
Ilissa Samplin
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
JSrinivasan@gibsondunn.com
ISamplin@gibsondunn.com

Dated: January 5, 2024

/s/ *H. David Leslie*
H. David Leslie