**Weil, Gotshal & Manges LLP**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

VIA ECF AND E-MAIL

**MEMO ENDORSED**

**David L. Yohai**
+1 (212) 310-8275
david.yohai@weil.com

June 10, 2024

The Hon. Katherine Polk Failla
United States District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

Re: _**A&E Television Networks, LLC v. Big Fish Ent'mt, LLC et al.**_**, 22-cv-07411 (S.D.N.Y.)**

Dear Judge Failla:

We write on behalf of Plaintiff AETN in response to Defendants' June 6 letter. More than _two months_ after fact discovery closed and well into the expert phase, Defendants have engaged in egregious discovery gamesmanship after realizing their copyright and damages defenses are crumbling.[1] Defendants' letter begins with a complete non-sequitur, referencing a contractual term in Section 2(f) of the _Live PD_ series agreement that it claims "specifically permitted" Big Fish to create _On Patrol: Live_. As the Court knows, Section 2(f) contains no such permissive language, let alone an express grant of rights to create a virtually identical show (and it does not even apply to Half Moon or REELZ). In any event, Defendants' letter is about an alleged discovery dispute, and in that regard Defendants' letter completely misses the mark and its requested relief should be denied. Fact discovery has long ended and it is time to move on with expert discovery and summary judgment without further manufactured distractions. Enough is enough.

As an initial matter, Defendants' brazen contention that they are championing the "integrity of the discovery process," is nonsense. Indeed, a mere three hours before filing their letter, Defendants produced **155** clearly non-privileged documents that _they improperly withheld as privileged_. These documents include executed contracts between Big Fish and AETN, emails from a PR consultant forwarding letters from viewers, and many dozens of emails from business executives commenting on promotional materials, press releases, and television production schedules with other business executives. Ex. 1. Defendants' privilege log (which has not been amended) falsely describes these **_very documents_** as "requesting and providing legal advice" and "information to assist in rendering legal advice." Ex. 2 (_see_ yellow highlighted entries). Defendants attempt to dismiss this obvious breach of discovery obligations by claiming in a footnote that these clearly non-privileged documents were only discovered during a re-review presumably undertaken a month ago. The timing of the "new" production and their letter to the Court strongly suggests, however, that Defendants were simply looking for cover to deflect from their own failures.

As Defendants concede, the parties expressly agreed to use _categorical_ privilege logs in

---

[1] Defendants' low damages/chargeback theory has imploded, along with their credibility, after the MGM document they fought to withhold revealed actual profits from _On Patrol: Live_ of over ███ in 2022, expected profits of nearly ████████ in 2023 (contrary to defendants' representation), and more to come in 2024. _See_ Ex. 3 (MGM000000001).

this action, consistent with Local Rule 26.2(c). Ex. 4, 5. AETN produced its categorical log more than three months ago. AETN later produced, before fact discovery closed, a handful of documents that it determined in good faith had inadvertently been withheld. Def. Ex. 4, 5. AETN then agreed, at Defendants' request (made just days before the close of fact discovery), to prepare an itemized log of the remaining documents in four specific categories *identified by Defendants*. During the conference on April 17, 2024, the Court instructed (and Defendants agreed) that if Defendants had any issues with AETN's itemized log they should notify the court immediately. That, of course, did not happen. AETN produced its itemized log a few days later, and the parties then met and conferred, but no credible issues were raised. The last discussion took place nearly a month ago, on May 10. During those discussions, AETN pointed out numerous deficiencies and hypocrisies in Defendants' own privilege log.[2] The reason that Defendants then went silent for a month is plain: they were scrambling to fix issues with their own log before suddenly resurfacing last week with a significant production and a belated Rule 37.2 letter. Defendants must show good cause for raising fact discovery disputes at such a late date, and they cannot do so given their lengthy and unnecessary delay here. *See Doe v. Zucker*, 2022 WL 2915698, at *2 (N.D.N.Y. July 25, 2022).

## I.    Legal Advice of AETN and Disney's Chief Legal Officers was Properly Withheld.

Defendants now make the absurd suggestion that 139 documents on the itemized log Defendants have had for over six weeks—those seeking or reflecting the legal advice of Henry Hoberman, AETN's *Chief Legal Officer*, and Steve Chung, Disney's *Chief Legal Officer*—are inherently suspect. To support this argument, Defendants misstate Mr. Hoberman's testimony. AETN has a Legal and Business Affairs department which Mr. Hoberman oversees, not, as Defendants suggest, a Legal department and a non-legal Business Affairs department. Mr. Hoberman testified that he oversees lawyers who negotiate contracts on AETN's behalf—the internal drafting, review, and discussion of which is a *legal* function. Ex. 6 at 7:7-8:17. Defendants' "two hats" argument is thus wholly unsupported. It is also disingenuous; Defendants themselves continue to withhold many communications with Lesley Freeman, MGM's Chief Legal Officer (who oversees Business & Legal Affairs), and Amanda Harrell, MGM's EVP of Business & Legal Affairs, with such general descriptions as "Email requesting legal advice . . . regarding the Reelz-Half Moon OPL deal" and "regarding negotiations with Third Parties re: Live PD or OPL." Ex. 2 (*see* green highlighted representative entries).

AETN's entries satisfy Fed. R. Civ. P. 26 and Local Rule 26.2; AETN has met all burdens to demonstrate privilege applies. The rules require a statement of the nature of the privilege, "the general subject matter of the document," its date, and the author and recipients of the document. AETN provided exactly that, which gives sufficient information to understand the basis and validity of its privilege assertion without invading the privilege itself. And while Defendants claim communications concerning the suspension of *Live PD* should be treated as "inherently business-related," Defendants *themselves* withheld numerous documents "regarding cancellation of Live PD." Ex. 2 (*see* pink highlighted representative entries). Courts should not "draw a rigid distinction between a legal purpose on the one hand and business purpose on the other" such that they "fail[]

---

[2] Defendants asked AETN to again re-review Categories 11 to 14, but—having already done that in good faith—AETN declined, as the request made no sense. Defendants never proposed that the "parties all agree to conduct a targeted re-review," nor did AETN ask Defendants to do so.

to account for the multiple and often-overlapping purposes" of attorney-client communications that justify the assertion of privilege. *In re Gen. Motors*, 80 F. Supp. 3d 521, 530 (S.D.N.Y. 2015). Indeed, "information sent to corporate counsel . . . with the expectation that the attorney will respond in the event that the matter raises important legal issues" is no less privileged than "an explicit request." *In re Buspirone*, 211 F.R.D. 249, 254 (S.D.N.Y. 2002).

With no legitimate basis to challenge AETN's privilege designations, Defendants generically object that AETN's descriptions are "ambiguous." They are not; Defendants' own privilege log lists *hundreds of documents* with even less detailed descriptions, including "regarding the Reelz-Half Moon OPL deal" and "regarding the Series Agreement." *See generally* Ex. 2. A bald claim of ambiguity is not a basis to demand a "sworn affidavit from company counsel"; if it was, no privilege log would ever be sufficient. Defendants' cases do not hold to the contrary; in *In re Symbol Techs.*, 2015 WL 5719719 (E.D.N.Y. Sept. 29, 2015), the Court did not actually order either party to provide such an affidavit. Nor do Defendants' specious objections justify *in camera* review two months after the close of fact discovery and six weeks after the itemized log was provided. *Zucker*, 2022 WL 2915698, at *2. None of the cases cited by Defendants concerned a dispute like this raised after the close of fact discovery, let alone on such flimsy grounds.

## II. Defendants' New Arguments Concerning Category 20 are Untimely and Invalid.

Defendants also now request an itemized log for Category 20, which concerns the advice of counsel regarding AETN's negotiations with Defendants in 2022 for the potential licensing of *Live PD*. Defendants have had AETN's log since early March, but never raised any complaints about Category 20 during the fact discovery period. They do so now to prop up their expert's tortured "estoppel" theory that AETN purportedly did not raise its ownership of copyrights in the *Live PD* series—a theory that ignores the **two cease-and-desist letters** AETN sent to Defendants in June and July 2022 concerning AETN's ownership of all "copyrights in the series content" of *Live PD*. This request is untimely and abusive, and should be denied.

Defendants concede there are *six different attorneys* who appear as authors and recipients of the documents in this category. As their sole justification for demanding an itemized log, Defendants repeat the notion, debunked above, that Mr. Hoberman's communications are inherently suspect, and also add AETN in-house counsel Maggie Reilly-Brooks to the same category of purportedly "dual role" attorneys. Defendants are wrong again: Ms. Reilly-Brooks was "Senior Vice President and Deputy General Counsel of Legal and Business Affairs" during the relevant time before July 2022 (Ex. 7 at 8:6-9:2), and like Mr. Hoberman, she served in a *legal* function. And many documents from the parties' 2022 negotiations were produced, including from Mr. Hoberman and Ms. Reilly-Brooks; only privileged internal communications were withheld.

At bottom, there is no basis for any further action at this late date. The parties are well into expert discovery and should focus on that stage of the case, not needlessly retreat back into fact discovery. Nothing in Defendants' letter merits *in camera* review, "sworn affidavits," or further itemized privilege logs. Rather, Defendants' extremely-belated recent production only raises serious questions about the integrity of their own log.[3] Defendants' requests should be denied.

---

[3] AETN is still reviewing Defendants' significant June 5 production and reserves all rights.

June 10, 2024
Page 4

**Weil, Gotshal & Manges LLP**

Respectfully submitted,

*/s/ David L. Yohai*
David L. Yohai

cc:       All counsel of Record (via ECF)

The Court is in receipt of Defendants' request for "the Court's
assistance in resolving disputes concerning Plaintiff[]'s
document-by-document privilege log and a specific category on
[Plaintiff]'s categorical privilege log" (Dkt. #109-10), as well
as Plaintiff's above response (Dkt. #112, 114).

As to the 139 challenged entries on Plaintiff's document-by-
document log, the Court accepts Plaintiff's good-faith assertions
that "[Plaintiff]'s entries satisfy Fed. R. Civ. P. 26 and Local
Rule 26.2" and that Plaintiff has "re-review[ed]" the relevant
documents in good faith.  Further, the Court does not believe
Plaintiff's descriptions are "cursory" or "do not provide enough
information to support [Plaintiff's] privilege claim."  *United
States* v. *Constr. Prod. Rsch., Inc.*, 73 F.3d 464, 474 (2d Cir.
1996) (finding descriptions in challenged privilege log
insufficient).  *Compare* Dkt. #109-6 (Plaintiff's document-by-
document log) at 16 (offering  description "Email chain
reflecting request for legal advice of Henry Hoberman concerning
suspension of *Live PD* and draft communications to be made in
connection with the same"); *with Constr. Prod. Rsch.*, 73 F.3d at
474 (offering descriptions "Fax: Whistleblower article" and
"Letter Re: Customer Orders").

As to Plaintiff's category of 360 documents "requesting or
providing the advice of counsel regarding negotiation with Big
Fish and Reelz for potential licensing of *Live PD*," the Court
also accepts Plaintiff's good-faith assertion that the category
contains "only privileged internal communications."  At bottom,
Plaintiff's categorical log is not so "vague and repetitive" or
without "rhyme or reason behind its chosen groupings" so as to

merit the Court's intervention.  *U.S. Bank Nat'l Ass'n* v. *Triaxx Asset Mgmt. LLC*, No. 18-CV-4044 (BCM), 2021 WL 1968325, at *4 (S.D.N.Y. Mar. 31, 2021); *see also In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 325-26 (S.D.N.Y. 2020).

Accordingly, Defendants' request is hereby DENIED in full.

As a final note, the Court is dismayed by the number and granularity of discovery disputes that the parties have brought to the Court's attention to date.  (*See, e.g.*, Dkt. #66, 75, 90, 91, 109 (requests for Court intervention filed since January 2024)).  The Court wishes to remind the parties of their obligation to construe and comply with the rules of discovery so as "to secure the just, speedy, and inexpensive determination of [this] action."  Fed. R. Civ. P. 1.  The Court urges the parties to meet and confer diligently and in good faith with the goal of resolving their disputes without the Court's intervention before bringing future disputes to the Court's attention.

The Clerk of Court is directed to terminate the pending motions at docket entries 109 and 110.

Dated:     June 11, 2024
           New York, New York

SO ORDERED.

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE